**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barry Lynn Moon, | No. CV-18-00524-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| American Family Mutual Insurance Company SI, | |
| Defendant. | |

Pending before the Court is Plaintiff Barry Lynn Moon's ("Moon") motion for attorneys' fees. (Doc. 37). Defendant American Family Mutual Insurance Company, S.I. ("American Family") has responded, (Doc. 39), and Moon has replied, (Doc. 40).

**I.  Background**

In January of 2018, Moon, an insured, brought breach of contract and bad faith claims against American Family, his insurer, in Maricopa County Superior Court. (Doc. 1-1 at 1–7). Moon claims that American Family is obligated to pay the $55,785.22 he incurred defending, and ultimately settling, a negligence claim, as well as costs and attorneys' fees incurred in compelling American Family to comply with his insurance policy. (Doc. 1-1 at 5–7).

In February of 2018, American Family removed the case to this Court. (Doc. 1).

(Doc. 34 at 1–2).

Moon sought to remand the case, (Doc. 18), and the Court granted the motion, finding that it lacked subject-matter jurisdiction, (Doc. 34). Moon now seeks attorneys'

fees in the amount of $16,733.03[1] for 58.38 hours of work performed after removal. (Doc. 37).

**II.     Governing Law**

Where a federal court remands a removed case to state court, it "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "[A] legal argument that loses is not necessarily unreasonable." *Shame on You Prods., Inc. v. Banks*, No. 16-55024, No. 16-56311, 2018 WL 3059389, at *3 (9th Cir. June 21, 2018) (citation omitted).

If fees are awarded, the Court uses the two-step lodestar method for setting the fee amount. *Albion Pac. Prop. Res., LLC v. Seligman*, 329 F. Supp. 2d 1163, 1166 (N.D. Cal. 2004). In the first step, "[t]he 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or

---

[1] The Court understands this figure to represent the amount that Moon is seeking in attorneys' fees, but notes that by its own summation of the amounts described in the billing sheet attached to Moon's motion, the total is $17,025.04. *See* (Doc. 37 at 4–7).

the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992) (citing *Blum*, 465 U.S. at 892 n.5).

In the second step, the Court "then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of" the factors provided for in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds as recognized in Stetson v. Grissom*, 821 F.3d 1157, 1167 (9th Cir. 2016). *Morales*, 96 F.3d at 363–64.[2] There is "[a] strong presumption that the lodestar figure . . . represents a 'reasonable' fee," which is only modified in "rare" and "exceptional" cases. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

### III. Analysis

American Family levels three challenges against Moon's request for attorneys' fees: (1) the Court does not have the power to award fees; (2) American Family had an objectively reasonable basis for removal; and (3) Moon's requested fees are unrelated to removal. (Doc. 39). Each argument will be addressed in turn.

### A. The Court's Power to Award Attorneys' Fees

American Family first contends that this Court cannot award attorneys' fees because: (1) it lost jurisdiction upon remand; and (2) 28 U.S.C. § 1447(c) requires an award of attorneys' fees to be made in the remand order. (Doc. 39 at 2). Both arguments fail. The Ninth Circuit has expressly held that a court may award attorneys' fees pursuant

---

[2] The twelve *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Morales*, 96 F.3d at 363 n.8 (quoting *Kerr*, 526 F.2d at 70). Factors one through five are subsumed in the reasonableness analysis performed in calculating the lodestar amount. *Id.* at n.9.

to 28 U.S.C. § 1447(c) after the case has been remanded to state court. *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 445 (9th Cir. 1992).

### B. Basis for Removal

American Family contends that even if the Court has the power to award attorneys' fees, it should not do so in this case, because American Family was objectively reasonable in removing the case on the basis of diversity jurisdiction. (Doc. 39 at 2–4). Specifically, American Family contends that its allegation that the amount in controversy exceeded the $75,000 jurisdictional requirement was objectively reasonable. (*Id.*)

American Family's argument proceeds in three steps. First, American Family claims that based on the structure of Moon's complaint, it had an objectively reasonable basis for believing that Moon was seeking at least $70,785.22. (*Id.* at 3). American Family points to the fact that in one part of the complaint Moon stated he paid $15,000 to settle the negligence suit and in another part of the complaint Moon "alleged he incurred $55,785.22 in attorneys' fees and costs defending himself." (*Id.*). American Family's characterization of the latter amount, however, is misleading. The complaint states that "Moon has suffered damages, *including the payment of the Settlement Amount*, attorney fees and costs incurred in defending the Suit of approximately $55,785.22." (Doc. 1-1 at 5, 7 (emphasis added)). Therefore, it was unreasonable for American Family to add the $15,000 settlement amount to the total damages that Moon incurred, which expressly accounted for the settlement amount. Given the clarity of the claim for damages, it was not objectively reasonable for American Family to conclude that Moon sought at least $70,785.22 for the negligence suit.

American Family next claims that it was reasonable for it to include pre- and post-judgement interest, totaling $12,400, in calculating the amount in controversy. (Doc. 39 at 3). As a general matter, however, the amount in controversy is "exclusive of interest," 28 U.S.C. § 1332, and American Family has made no argument as to why interest should have been included in the amount in controversy in this case. Therefore, it was objectively unreasonable for American Family to include interest in its

amount-in-controversy calculation.

American Family finally argues that Moon "also sought non-compensatory and punitive damages, which when added to the above total, easily surpassed the jurisdictional threshold." (Doc. 39 at 3–4). As noted in this Court's order remanding this matter, however, American Family engaged in "[m]ere speculation" as to the non-compensatory damages (attorneys' fees for the present matter) and as to punitive damages. (*See* Doc. 34 at 3–4). American Family's argument that these amounts push the amount in controversy beyond the jurisdictional threshold is not objectively reasonable where it does not even assign an approximate dollar amount to such damages.

Accordingly, the Court finds that American Family was not objectively reasonable in removing this matter to federal court.

### C. Relation of Attorneys' Fees to Removal

American Family contends that even if it is required to pay Moon's attorneys' fees, the attorneys' hours and rates were unreasonable. (Doc. 39 at 4–7).

#### 1. Reasonable Hours Billed

American Family argues that much of the 58.38 hours billed by Moon's lawyers are unrelated to removal. Initially, American Family argues, and the Court agrees, that the time Moon's lawyers spent reviewing American Family's Answer is unrelated to removal. Furthermore, American Family argues that the time spent disclosing material under the Mandatory Initial Discovery Pilot ("MIDP"), attending scheduling conferences, and preparing joint case management statements is not related to removal, because Moon would have had to engage in the same activity under Arizona law. (*Id.* at 6). The Court agrees that the requirements of MIDP disclosure and preparation of joint management statements mirror those imposed by Arizona state procedural rules, and to the extent these activities must be repeated on remand, the material is already prepared, making any duplicative work de minimis. *Compare* (Doc. 3) *and* Fed. R. Civ. P. 26(f)(2)–(3), *with* Ariz. R. Sup. Ct. 16(b)(3), 26.1. The time spent attending scheduling conferences is related to removal, because but for American Family's improper removal, Moon's

attorneys would not have attended such conferences in federal court. Additionally, to the extent there are scheduling conferences in Arizona state court, Moon's attorneys will have to devote a not insubstantial amount of time to again attend these conferences. Therefore, American Family must compensate Moon for the time his attorneys unduly spent at scheduling conferences. Finally, American Family contends that Moon cannot be compensated for the time that his attorneys spent discussing the case with American Family's counsel or with Moon himself, because such conversations were unrelated to removal. (Doc. 39 at 6). Conversations that would not have happened if the case were not removed, however, are necessarily related to removal. Those conversations that are related to removal are compensable, while those unrelated to removal are not. Accordingly, the following entries are entirely non-compensable:

| Date | Matter | Description | Attorney | Rate | Amount |
|---|---|---|---|---|---|
| 03/27/2018 | C 5480 Moon - American Family | Review Defendant's Responses to Mandatory Initial Discovery Requests | Jason Bruno 0.30 | $365.00 | $109.50 |
| 03/26/2018 | C 5480 Moon - American Family | Review Defendant's changes to Mandatory Initial Disclosures and proposed final version of Mandatory Initial Disclosures. Email from and to Christopher Feasel and Jared Olson regarding Mandatory Initial Disclosures. | Jason Bruno 0.30 | $365.00 | $109.50 |
| 02/23/2018 | C 5480 Moon - American Family | Review American Family Answer to Complaint. | Jason Bruno 0.20 | $365.00 | $73.00 |
| 03/21/2018 | C 5480 Moon - American Family | Legal Services: Reviewing emails from opposing counsel re: mandatory initial discovery responses extending their deadline to reply, and revisions to the joint case management plan. Reviewing opposing counsel's revised case management plan and making our own revisions. Conferring with DJV and JMB about mandatory discovery response requirement. Drafting initial mandatory discovery responses. | Jared Olson 1.53 | $240.00 | $367.93 |
| 03/20/2018 | C 5480 Moon - American Family | Email from Christopher Feasel regarding revisions to proposed case management plan | Jason Bruno 0.20 | $365.00 | $73.00 |
| 03/16/2018 | C 5480 Moon - American Family | Revise and edit Proposed Case Management Plan. Review file for preparation of Proposed Case Management Plan. Discussions with Jared Olson and emails to and from Jared Olson regarding Proposed Case Management Plan. | Jason Bruno 0.60 | $365.00 | $219.00 |
| 03/16/2018 | C 5480 Moon - American Family | Legal Services: Drafting joint case management plan. Drafting mandatory initial discovery responses. | Jared Olson 3.83 | $240.00 | $918.87 |

| 03/15/2018 | C 5480 Moon - American Family | Legal Services: Reviewing revised Federal Rules and preparing joint case management plan for scheduling conference. Reviewing requirements for mandatory initial discovery requests. Conferring with JMB. | Jared Olson 2.08 | $240.00 | $498.80 |
|---|---|---|---|---|---|
| 03/13/2018 | C 5480 Moon - American Family | Review Court's Order and requirements for Case Management Plan. Email to and from Christopher Feasel regarding meeting to discuss Case Management Plan. | Jason Bruno 0.30 | $365.00 | $109.50 |
| 03/13/2018 | C 5480 Moon - American Family | Legal Services: Reviewing order for conference report. Reviewing updated Federal Rule 16. | Jared Olson 0.53 | $240.00 | $126.27 |

(Doc. 37 at 4–5). Thus, 9.87 hours will be subtracted from the total time sought by Moon.

Further complicating the calculation of reasonable hours expended pursuant to removal is Moon's attorneys' practice of block billing. Block billing is the practice of "lump[ing] together multiple tasks" in a billing statement. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004). Block billing indicates that a party seeking fees has "failed to carry [its] burden" and "makes it more difficult to determine how much time was spent on particular activities." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). Accordingly, the Court is permitted to reduce block-billed hours, so long as it "'explain[s] how or why . . . the reduction . . . fairly balance[s]' those hours that were actually billed in block format." *Id.* (quoting *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001)). For example, in *Welch*, the Ninth Circuit suggested that it was permissible to reduce block-billed hours by ten to thirty percent based upon a report that block billing inflated billed hours by that percentage range. *Id.* Unlike in *Welch*, however, the issue in the present case is not merely block billing, and the inevitable inflation of reported time that attends such imprecise record keeping, but the practice of grouping compensable and non-compensable activities. Accordingly, the Court retains discretion to reduce more than 30% of the block-billed hours to account for non-compensable activities where it determines that such activities exceed 30% of the time spent on a block-billed entry.

The following entries are block billed in a manner where non-compensable activities are grouped with compensable activities:

| Date | Matter | Description | Timekeeper | Rate | Amount |
|---|---|---|---|---|---|
| 03/28/2018 | C 5480 Moon - American Family | Review Defendant's Mandatory Initial Disclosures. Email to Barry Moon regarding Offer of Judgment. | Jason Bruno 0.30 | $365.00 | $109.50 |
| 03/26/2018 | C 5480 Moon - American Family | Review and revise reply brief in support of motion for remand. Review and revise discovery responses. | Seth Keith 0.81 | $140.00 | $113.94 |
| 03/26/2018 | C 5480 Moon - American Family | Finalizing, filing, and serving reply brief for our Motion to Remand. Finalizing, filing, and serving Joint Case Management Plan. Finalizing and serving Initial Mandatory Discovery Responses. | Jared Olson 2.87 | $240.00 | $688.33 |
| 03/23/2018 | C 5480 Moon - American Family | Review and Revise Reply in Support of Plaintiff's Motion to Remand. Revise and edit Initial Mandatory Disclosures and review file. Emails to and from and phone calls to and from Jared Olson regarding Initial Mandatory Disclosures. | Jason Bruno 0.80 | $365.00 | $292.00 |
| 03/23/2018 | C 5480 Moon - American Family | Legal Services: Preparing documents for initial production. Revising initial discovery responses and sending draft to Moon for verification. Revising reply brief with comments from DJV and JMB. | Jared Olson 6.27 | $240.00 | $1,505.60 |
| 03/22/2018 | C 5480 Moon - American Family | Review Reply to Response to Motion to Transfer Venue. Review file. Revise and edit Initial Mandatory Disclosures. Phone call to Barry Moon regarding information for Initial Mandatory Disclosures. | Jason Bruno 0.60 | $365.00 | $219.00 |
| 03/22/2018 | C 5480 Moon - American Family | Legal Services: Drafting initial mandatory discovery responses. Sending draft to JMB for approval. Reviewing Defendants' response to our Motion to Remand. Researching issues and drafting Reply in support of our motion. | Jared Olson 8.02 | $240.00 | $1,925.53 |
| 03/21/2018 | C 5480 Moon - American Family | Review stipulation from Defendant to file Reply to Motion to Transfer Venue out of time. Discussion with Jared Olson regarding Defendant's request to file Reply to Motion to Transfer Venue out of time. Revise and edit case management plan. Discussions with Jared Olson regarding case management plan. | Jason Bruno 0.40 | $365.00 | $146.00 |

(Doc. 37 at 4–5). The Court finds it appropriate to reduce the hours expended on these block-billed activities by 50%. This percentage fairly balances the appropriate amount of time spent on compensable activities with the reduction necessary to prevent billing American Family for non-compensable activities. Accordingly, 10.03 of the block billed hours will be subtracted from the total time sought by Moon.

Additionally, despite seeking fees for six individuals (Jason Bruno, Jared Olson,

Seth Keith, Diana Vogt, Stephanie Holm, and Richard Dowse), Moon's accompanying affidavit only provides information regarding two of those individuals (Jason Bruno and Jared Olson). (Doc. 37 at 4–7); (Doc. 37-1). A party seeking fees must provide an affidavit setting forth "[a] brief description of the relevant qualifications, experience and case-related contributions of each attorney for whom fees are claimed." LRCiv 54.2(d)(4)(A). Because Moon failed to comply with the local rules, the Court will not award attorneys' fees for work done by Seth Keith, Diana Vogt, Stephanie Holm, or Richard Dowse. Therefore, 14.34 hours will be subtracted from the total time sought by Moon.[3]

Ultimately, Moon's attorneys reasonably billed 24.14 hours, which is the difference of 58.38 (the total hours sought by Moon) subtracted by 34.24 (the non-compensable hours).

### 2. Reasonable Hourly Rate

American Family contends that Moon's requested fees of between $140 and $365 per hour are unreasonable. (Doc. 39 at 6–7). In support of his motion for attorneys' fees, Moon has included an affidavit stating that the fees were "based upon the regular customary rates charged to" his attorneys' other clients and that the "charges and services" were "fair" and "reasonable." (Doc. 37-1 at 4). An affidavit from a participating attorney, standing alone, is insufficient to satisfy Moon's burden of establishing the prevailing market rate for attorneys' fees; this is particularly true here, where the affidavit merely states that the rate is reasonable, but does not purport to set forth the prevailing market rate. *See Blum*, 465 U.S. at 895 n.11.

Where a party seeking fees fails to bear their burden of establishing the prevailing market rate, a court is permitted to rely on other evidence to set the reasonable hourly rate. *See Allen v. Bay Area Rapid Transit Dist.*, No. C 00-3232 VRW, 2003 WL

---

[3] The Court notes, for the sake of clarity, that it only counted the 03/26/2018 billing entry by Seth Keith once in its calculation. Therefore, although the entry was originally reduced by 50% above, because it was block billed, the remainder of the entry is non-compensable because it was being requested by Seth Keith. Accordingly, a total of .81 hours were subtracted for that entry.

23333580, at *5–6 (N.D. Cal. July 31, 2003).[4]  A common method utilized by courts to establish this rate is to use government statistics to set the average hourly rate in the locality where the court sits, and then to divide that figure by the ratio of net to gross receipts of law partnerships to account for the hourly rate billed to clients.  *See, e.g.*, *Albion*, 329 F. Supp. 2d at 1176.  While this process does not necessarily utilize "the best data available," the parties do not present any other data sufficient to calculate the prevailing market rate for attorneys' fees.  *Allen*, 2003 WL 23333580, at *6.

American Family proffers Bureau of Labor Statistics ("BLS") data indicating that the mean hourly wage for lawyers in Arizona is $66.67.  (Doc. 39 at 6–7 (citing Bureau of Labor Statistics, *Occupational Employment Statistics: May 2017 State Occupational Employment and Wage Estimates Arizona* (Mar. 30, 2018), https://www.bls.gov/oes/current/oes_az.htm#23-0000)).  Moon contests this mean hourly wage estimate, contending that rates vary between metropolitan areas, such as Phoenix, and less populated locales, such as Yuma.  (Doc. 40 at 4).  To adjust for this concern, the Court will use BLS statistics describing the mean hourly wage for attorneys in the Phoenix-Mesa-Scottsdale metropolitan area: $70.28.  Bureau of Labor Statistics, *Occupational Employment Statistics: May 2017 Metropolitan and Nonmetropolitan Area Occupational Employment and Wage Estimates Phoenix-Mesa-Scottsdale, AZ* (Mar. 30, 2018), https://www.bls.gov/oes/current/oes_38060.htm#23-0000.  The ratio of net to gross receipts for law partnerships, according to the most recent data published in 2012, is 35.17%.  *See* United States Census Bureau, *Statistical Abstract of the United States: 2012*, at 492 tbl.746 (2011), https://www2.census.gov/library/publications/2011/compendia/statab/131ed/2012-statab.pdf (indicating that legal partnerships had business receipts of $145,000,000,000 and net income of $51,000,000,000 in 2008).  Accordingly, the prevailing hourly rate for attorneys in Phoenix is $199.82—the quotient of $70.28 divided by 35.17%.

---

[4] While the Court would not usually embark on the venture of calculating the prevailing market rate for attorneys' fees without a plaintiff meeting their burden, it does so here upon American Family's request.  *See* (Doc. 39 at 6–7).

### IV. Conclusion

Moon has not argued, and the Court does not find, that the *Kerr* factors compel an upward departure from the lodestar figure. The product of $199.82 (the reasonable hourly rate for attorneys in Phoenix) multiplied by 24.14 (the number of hours reasonably billed by Moon's attorneys) is $4,823.65. Accordingly,

**IT IS ORDERED** that Moon's motion for attorneys' fees, (Doc. 37), is **GRANTED** in the amount of $4,823.65.

Dated this 6th day of August, 2018.

James A. Teilborg
Senior United States District Judge